UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DUSTIN GORDON,

       Plaintiff,

v.

PATRICIA L. CARUSO, *et al.*,

       Defendants.
                                      /

File No. 1:06-cv-571

HON. ROBERT HOLMES BELL

**O P I N I O N**

This is a prisoner civil rights action filed by pro se Plaintiff Dustin Gordon. Before the Court is a motion for reconsideration (Dkt. No. 134) filed by Defendants Brian Schaefer, Patricia L. Caruso, Dennis Straub, Dave J. Burnett, Ken McKee, Cathleen Stoddard, Mike Walczak, and Daniel Maguire with respect to the Court's opinion (Dkt. No. 133) on a Report and Recommendation ("R&R") (Dkt. No. 124) on Defendants' motion for summary judgment.

**I. Background**

Plaintiff alleges that he is a member of the Asatru[1] faith, and that Defendants have violated his rights by preventing him from engaging in group worship services with other adherents of his faith. Plaintiff brings this action against prison officials of the Michigan

---

[1]According to Defendants' evidence, this religion is also referred to as Odinism or Wotanism. The Court will use the term Asatru inclusively to refer to all three.

Department of Corrections ("MDOC") for declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1. Plaintiff asserts three claims: (1) violation of his right to free exercise of his religion under the First Amendment, (2) substantial burden on the exercise of his religion in violation of RLUIPA, and (3) violation of his right to equal protection under the Fourteenth Amendment.

On January 16, 2007, Defendants Brian Schaefer, Patricia L. Caruso, Dennis Straub, Dave J. Burnett, Ken McKee, Cathleen Stoddard, Mike Walczak, and Daniel Maguire, filed a motion for summary judgment (Dkt. No. 17) with an affidavit of Defendant Burnett in support. (Dkt. No. 21.) Plaintiff moved to strike the affidavit. (Dkt. No. 33.) The Magistrate Judge recommended that the Court grant the motion to strike, in part, and that the Court grant the motion for summary judgment in its entirety. (Dkt. No. 43.) Senior United States District Judge Wendell A. Miles adopted the R&R with respect to the motion to strike and rejected the R&R with respect to the motion for summary judgment. Judge Miles denied the motion for summary judgment because, at that stage of the case, prior to formal discovery, there remained an issue of fact as to whether the government had a compelling interest in preventing Asatru group worship because the evidence was contradictory as to whether adherents of the Asatru faith promote racial violence. (Dkt. No. 47, 09/04/2007 op. at 4.) Judge Miles also determined Defendants had not submitted evidence to demonstrate a rational basis for treating members of the Asatru faith differently from members of other

2

faiths, such as the Nation of Islam and the Moorish Science Temple, and that Plaintiff needed additional opportunity to obtain evidence regarding the beliefs of the Moorish Science Temple. (*Id.* at 5-6.)

Defendants filed another motion for summary judgment on November 28, 2008 (Dkt. No. 86), submitting in support of their motion an expert report prepared by Dr. Gregg W. Etter, Sr., which describes the Asatru faith and its beliefs and practices, and details the policies of other prison facilities regarding Asatru group worship (Dkt. No. 87, Ex. 5). On May 13, 2009, the Court adopted Magistrate Judge Carmody's recommendation to deny the motion for summary judgment, in part, because the expert report was unsigned and did not satisfy the requirements of Rule 26 of the Federal Rules of Civil Procedure.[2] (Dkt. No. 115.) However, because Defendants had submitted a motion to supplement with a signed copy of the report after the R&R was entered, the Court directed the Magistrate Judge to consider the motion to supplement and to reconsider the motion for summary judgment. (*Id.*) Plaintiff was given an opportunity to submit a supplemental response to the summary judgment motion, and did so on June 2, 2009. (Dkt. No. 122.) On July 6, 2009, Magistrate Judge Carmody recommended that Defendants' renewed motion for summary judgment be granted. (Dkt. No. 124.) On Plaintiff's objections (Dkt. No. 126), the Court rejected the R&R because the newly-filed signed expert report was unsworn and was, therefore, hearsay. (Dkt. No. 133.) The Court gave Defendants an opportunity to correct this error with a sworn

---

[2]The motion was, however, granted as to Defendants McKee, Stoddard, Walczak, Maguire, and Schaefer.

3

affidavit by their expert affirming the report, and noted that it would reconsider the summary judgment motion, the R&R thereon, and Plaintiff's objections thereto, if Defendants corrected the report with an affidavit affirming its contents. (Dkt. No. 133.) Defendants filed the affidavit on March 16, 2010. (Dkt. No. 134.) The Court now reconsiders its order rejecting the July 6, 2009, R&R, as well as Plaintiff's additional objections to that R&R.

## II. Standard of Review

In reviewing a report and recommendation ("R&R"), this Court is required to make a de novo determination of those portions of the R&R to which specific objections are made, and may accept, reject, or modify any or all of the Magistrate Judge's findings or recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

On a motion for summary judgment, the movant must show that "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering such a motion, the Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To defeat a properly supported motion for summary judgment, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

## III. Evidence

Because the nature and sufficiency of the evidence offered by both sides is at the heart

of the merits of the summary judgment motion, a summary of this evidence is warranted.

**A. Defendants' Evidence**

In support of their first motion for summary judgment, Defendants offered the affidavit of Defendant Dave Burnett, the special activities coordinator for the MDOC. (Dkt. No. 21.) Paragraphs 8, 11, 12, 13, and part of paragraph 14, were deemed inadmissible and stricken by the Court. (Dkt. No. 47, 09/04/2007 order.) Defendant Burnett states in the remaining portion of his affidavit that the Asatru faith is "projected and perceived by prisoners and staff as racially exclusive" and that "[w]hite supremacists join and use the religion as a cover to spread white supremacist ideology and to recruit converts to the white supremacist ideology." (Burnett Aff. ¶ 14.) He asserts that:

> To allow white supremacists to gather as a group provides the opportunity for the group to gain power through their recruiting and create disruption in facilities. Additionally, nonwhites, who feel threatened by what appears to be official endorsement of white supremacist ideology, may cause disruption to the facility. This would inevitably lead to conflict.

(*Id.* at ¶¶ 15-16.)

Defendants also offered the expert report of Dr. Etter. (Dkt. No. 102.) Dr. Etter's report discusses the history of the Asatru religion and its growth in the prison system, noting beliefs related to racial purity and its practice by avowed white supremacists. (*Id.* at 3-9.) The report also discusses evidence of Asatru-related violence in the prison system, including an instance where a prison inmate was murdered as part of an Asatru group ceremony held in the Virginia prison system in 2000. (*Id.* at 7.)

Dr. Etter conducted a telephone survey of state prison systems; his results show that: two states do not allow the practice of Asatru by inmates either in their cells or in a group setting, 39% do not allow the practice of Asatru in a group setting, officials in 90% of the prisons surveyed observed connections between practitioners and those involved in white supremacist or security threat groups, 66% reported assaults by Asatru practitioners against other inmates and prison staff, including a ritualistic assault against prison staff and two inmate killings, one of which was a ritualistic killing. (*Id.* at 10-13.) One prison shut down the practice of the religion altogether but now allows it "under intense supervision." (*Id.* at 13.)

**B. Plaintiff's Evidence**

In response to the summary judgment motion, Plaintiff submitted an affidavit in which he asserts that he is not a white supremacist or racist, that he has never been part of a group that espouses such beliefs, and that he has never seen any racist teachings inside any books on Asatru. (Dkt. No. 89, Ex.A.)

Plaintiff submitted a sworn letter from Laurel Owen, the Coordinator for the Prison Affairs Bureau of the Odinic Rite, who asserts that she has visited several facilities in Texas and that the central authority in Texas allows group worship practices at Texas facilities. (Dkt. No. 89, Ex. B.) She also disputes several details regarding Dr. Etter's summary of the beliefs of the Asatru religion. (*Id.*)

In an affidavit submitted by Plaintiff in response to an earlier motion, Ms. Owen lists several states that have "organized Odinist/Asatru services or have sanctioned observances

of our holy days." (Dkt. No. 45, Ex. A, at 1.) She asserts that the federal bureau of prisons allows group ceremonies for the Asatru, and that Asatru practitioners require regular meetings and a worship area to perform their services. (*Id.* at 2.) She asserts that Asatru is not a white supremacist group and that the "Nation of Islam and Christian Identity" are also perceived as racially exclusive. (*Id.* at 3.)

In response to a previous motion, Plaintiff submitted an unsworn letter from Jane Ruck, a leader of Northern Way Asatru Ministries, a "national prison outreach." (Dkt. No. 45, Ex. A, at 5.) Ms. Ruck asserts that the "holy days" of the Asatru religion must be celebrated in a group setting. (*Id.* at 6.) She asserts that Asatru adherents are allowed to gather for group study in other states with a volunteer or corrections officer present to supervise. (*Id.*) She asserts that the Asatru religion does not have a supremacist ideology, that Asatru adherents believe in tolerance of others, and that the Asatru religion is not exclusive to whites. (*Id.* at 7, 8.)

Plaintiff also submitted several documents written by Valgard Murray, a spiritual leader of an Asatru church, a minister of record for the federal bureau of prisons, and an advisor to federal chaplains regarding the Asatru religion. (Dkt. Nos. 39, 122.) In an unsworn letter, Murray asserts that Asatru adherents practice group worship and that this is part of the foundation of the faith. (Dkt. No. 39, Attachment 1, at 1.) He asserts that the Asatru Alliance promotes the native religion and culture of Northern European people but does not practice, preach, nor promote hatred, bigotry, or racism. (*Id.* at 2.) He contends that "in the extremely rare occasion where someone who is not of primary European descent

7

wishes to learn about the Asatru religion, they are supported in their efforts to do so," but that the Asatru religion is not considered racially exclusive "by those who practice it." (*Id.*)

In an affidavit, Murray states that the "blot" is the most important Asatru religious service and that it must be performed once a month, and he lists several items that are required to perform the ritual. (Dkt. No. 39, Murray Aff.) In another affidavit, Murray challenges statements in Dr. Etter's report regarding the Asatru religion, its religious rites, and its historic ties to the Nazi party and racist groups. (Dkt. No. 122, Ex. A, Murray Aff.)

### IV. Analysis

**A. RLUIPA claim**

Defendants fear that allowing practitioners of the Asatru faith to engage in group worship activities would provide cover for white supremacists to organize and recruit others, which would increase the potential for racial conflict in the prison.

Section 2000cc-1 of Title 42 provides, in relevant part:

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest.

*Id.* The Magistrate Judge determined that there remains an issue of fact as to whether Defendants' policy banning Asatru group worship substantially burdens the exercise of Plaintiff's religion, but determined that summary judgment in Defendants' favor was

8

warranted because Defendants had satisfied their burden of showing that the group worship ban furthers a compelling government interest and that it is the least restrictive means of furthering that interest. Plaintiff objects that there is insufficient evidence on which to conclude that the ban on Asatru group worship is the least restrictive means of furthering that interest. The Court agrees.

Defendants have the burden of showing that their policy is the least restrictive means of furthering their asserted interest. 42 U.S.C. § 2000cc-1(a). Defendants argued in their motion for summary judgment that the Court must give deference to prison officials on this issue, citing *Hoevenaar v. Lazaroff*, 422 F.3d 366 (6th Cir. 2005). In that case, a prisoner challenged a prison grooming rule prohibiting him from growing a "kouplock," a long section of hair at the base of his skull. *Id.* at 367. The court reversed the district court's grant of injunctive relief because the district court "failed to give proper deference to prison officials" with respect to the concerns presented by the grooming rule. *Id.* The court referred to a previous decision in which it stated:

> [O]nce prison officials have provided expert testimony sufficient to justify the security regulation and resultant impingement of prisoner rights, "the courts must defer to the expert judgment of the prison officials unless the prisoner proves by 'substantial evidence . . . that the officials have exaggerated their response' to security considerations."

*Id.* at 370 (quoting *Espinoza v. Wilson*, 814 F.2d 1093, 1099 (6th Cir. 1987)).

*Hoevenaar* is distinguishable. In that case, the state had offered testimony that the specific alternatives offered by the plaintiff were not workable. *Id.* at 371-72. In contrast, Defendants have not offered any evidence demonstrating consideration of any alternatives

9

to the group worship ban. The Court cannot give deference where there is no evidence of a judgment or determination to which the Court can defer. *See Spratt v. R.I. Dep't of Corr.*, 482 F.3d 33, 42 (1st Cir. 2007) ("[B]efore we can evaluate whether deference is due, we require that prison administrators explain in some detail what their judgment is."); *Murphy v. Mo. Dep't of Corr.*, 373 F.3d 979, 989 (8th Cir. 2004) ("There exists a question of fact as to whether there are means available to MDOC less restrictive than the total preclusion of group worship for CSC members. It is not clear that MDOC seriously considered any other alternatives, nor were any explored before the district court.").

In response to Defendants' motion for summary judgment, Plaintiff suggested that prison officials could allow an Asatru service under the supervision of prison officials using a pre-approved script, or by increasing training for officers to distinguish between religious and non-religious practice. (Dkt. No. 89, Pl.'s Resp. in Opp'n to Mot. for Summ. J. 12.) Defendants have not responded as to the feasibility of these, or any other, alternatives.

The Court also notes that Defendant Burnett's responses to Plaintiff's interrogatories indicate that Defendants have considered a means to prevent the possibility of racial supremacists from coopting other groups in the prison, such as the Nation of Islam, without resort to a ban on group activity. Defendant Burnett states in his responses:

> Prisoner black supremists, if not controlled by staff, may join [the Nation of Islam] and attempt to promote a black supremist ideology. However, if the prisoner Nation of Islam group is required to use the curriculum provided by the Nation of Islam community, there will be no black supremist teachings.

(Dkt. No. 89, at 5.) On the evidence before the Court, it is not possible to determine whether this alternative (i.e., the use of an approved curriculum or, as Plaintiff suggests, a pre-

10

approved script) would be feasible as a means to address Defendants' concerns regarding group worship activity by Asatru practitioners.

Defendants are not entitled to deference merely because they have shown that their policy furthers a compelling interest. If that were the case, RLUIPA's additional requirement to show that the policy at issue is the least restrictive means to further that interest would have no meaning. It is incumbent upon Defendants to provide *some* evidence that alternatives to the group worship ban have been considered.

The Court does not express any opinion as to the scope of Defendants' requirement to consider alternatives, or as to whether any options proposed by Plaintiff are valid alternatives; however, on the evidence before the Court, Defendants have not satisfied their burden of showing that the ban on group worship is the least restrictive means of furthering their interest in maintaining prison security.

## B. First Amendment claim

In *Turner v. Safley*, 482 U.S. 78 (1987), the Supreme Court identified several factors for courts to consider when determining whether a prison regulation can withstand a First Amendment challenge: (1) whether there is a valid, rational connection between the prison regulation and the legitimate government interest put forward to justify it; (2) whether alternative means of exercising the right remain open; (3) the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and, (4) whether there are ready alternatives to the regulation that

accommodate the prisoner's rights at de minimis cost to valid penological interests. *Id.* at 89-91.

In their motion for summary judgment, Defendants argued that, because they satisfied the stricter requirements of RLUIPA, they also satisfied the more deferential *Turner* standard. (Dkt. No. 87, Defs.' Br. in Supp. of Mot. for Summ. J. 7.) Because the Court determines that Defendants have not satisfied their burden under RLUIPA, this argument is not availing.

In the R&R, the Magistrate Judge concluded that the *Turner* factors weighed in Defendants' favor. (Dkt. No. 124, R&R 9-10.) The Magistrate recommended granting Defendants' motion for summary judgment as to Plaintiff's First Amendment claim because Defendants had offered evidence to show that the policy disallowing group worship for adherents of the Asatru faith is reasonably related to a legitimate penological interest. (Dkt. No. 124, R&R 7-10.) However, neither Defendants nor the R&R addressed the viability of the alternatives identified by Plaintiff. *See Turner*, 482 U.S. at 91 ("[I]f an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at de minimis cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard."). The Court acknowledges that a First Amendment claim differs somewhat from an RLUIPA claim on this issue, because RLUIPA places the burden on Defendants to show that the regulation at issue is the least restrictive means, whereas in the First Amendment context, Plaintiff has the burden of showing that

there are ready alternatives to the regulation. *See* 42 U.S.C. § 2000cc-1(a) (setting forth the government's burden under RLUIPA); *Akers v. McGinnis*, 352 F.3d 1030, 1048 (6th Cir. 2003) (noting a plaintiff's burden under *Turner*). However, Plaintiff's evidence is sufficient to survive Defendants' present motion. As noted with respect to Plaintiff's RLUIPA claim, Plaintiff has submitted statements by Defendant Burnett suggesting that Defendants have implemented, or at least considered, the use of approved curriculum as an alternative in response to the type of concerns raised by a group like the Asatru, i.e., a group that "may be perceived as racially exclusive" and to which "supremists . . . may join . . . and attempt to promote a . . . supremist ideology." (Dkt. No. 89, Ex. C.) Plaintiff's evidence suggests, at a minimum, that this alternative deserves further exploration to determine whether it is workable for the Asatru. Because this issue has not been developed, the Court declines to weigh the *Turner* factors in Defendants' favor. For these reasons, the Court will deny Defendants' motion for summary judgment as to Plaintiff's First Amendment claim.

**C. Equal Protection claim**

The Equal Protection Clause embodies the rule that "states cannot make distinctions which either burden a fundamental right, target a suspect class, or intentionally treat one differently from others similarly situated without any rational basis for the difference." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). Plaintiff argues that his right to equal protection has been violated because groups that promote racist and supremacist teachings, such as the Nation of Islam and the Moorish American Science

13

Temple, are permitted to engage in group activity in the prisons. The R&R concluded that there is a rational basis for treating members of the Asatru faith differently from these groups, based on the demonstrated connection between the practice of Asatru and violence and racial conflict in the prison setting. (Dkt. No. 124, R&R 14.) The Court agrees.

Plaintiff contends that nothing in Defendants' evidence distinguishes the Asatru faith from other religions that might promote racial conflict, such as the Nation of Islam or the Moorish Science Temple of America; however, it is Plaintiff's burden to show that his group is similarly situated to these other groups. Defendants have demonstrated that there are concerns sufficient to justify restrictions on Plaintiff's group in particular, namely, the use of the Asatru faith in the prison context as a means to provide cover for white supremacists to promote their ideology and foment racial conflict. That evidence is not disputed, and Plaintiff has not offered any similar evidence regarding the Nation of Islam or the Moorish Science Temple suggesting that the same concerns exist for these groups.

Plaintiff also contends that the Magistrate Judge did not consider evidence favorable to his claims. Plaintiff contends that Defendant Burnett acknowledged in his interrogatory responses that there has been no violence in MDOC prisons by Asatru practitioners and that he does not believe violence will occur if Asatru services are allowed. (Dkt. No. 126, Objs. 2.) However, Plaintiff's reliance on Defendant Burnett's statements is misplaced. In response to the summary judgment motion, Plaintiff submitted a truncated copy of an interrogatory response by Defendant Burnett which states, in relevant part:

14

> 9. Do you have any evidence of violence that has occurred in the MDOC because prisoners have been allowed to practice Asatru?
>
> RESPONSE: No. Those prisoners practicing the Asatru religion in the MDOC are only allowed to practice individually. The concern is allowing them to practice as a group, which has not been allowed.
>
> 10. Why do you believe that there will be an increase in violence in the MDOC if Asatru services are allowed?
>
> RESPONSE: I have not stated I believe there will be an increase in violence. However, I have received documents from Asatruans that suggest that there is a possibility of . . . .

(Dkt. No. 89, Ex. C.) Defendant Burnett's response to interrogatory nine does indicate that the practice of the Asatru faith has not resulted in violence in the MDOC prison system. However, that admission merely suggests that the group worship ban is effective; it does not undermine the necessity for a group worship ban to prevent future violence. Defendants are not *required* to show evidence of past violence in the MDOC system to justify their policy. *See Espinoza v. Wilson*, 814 F.2d 1093, 1099 (6th Cir. 1987) ("[A]n actual danger need not be demonstrated, it is enough to show that a potential danger exists."). Defendants' expert report demonstrates a link between the practice of Asatru and white supremacy and violence in other prisons. (*See* Dkt. No. 102, Etter Report 13.) That evidence is not disputed by Plaintiff.

Moreover, in Defendant Burnett's response to interrogatory ten, he did not state that there would *not* be an increase in violence; he denies making an affirmative statement. The remainder of the response suggests that he had reason to believe there could be violence,

though the full statement cannot be ascertained from the documents provided by Plaintiff. Thus, this statement does not add to Plaintiff's evidence.

Plaintiff also objects to the Magistrate Judge's reference to other cases and online sources for the proposition that there is a well-documented connection between practitioners of the Asatru religion and white supremacy. (Dkt. No. 126, Pl.'s Objs. 7-8; *see* Dkt. No. 124, R&R 7-8.) Plaintiff refers to a previous opinion by this Court in this matter, in which the Court declined to adopt the Magistrate Judge's reliance on cases in other districts, stating that "[w]hatever has been suggested by courts based on evidence submitted in other cases is not controlling here . . . ." (Dkt. No. 47, 09/04/2007 op. at 4.) However, in that previous opinion, the Court was considering the issue of whether Plaintiff or the religion *as he practices it* promotes white supremacy. *Id.* At issue in the present motion is whether, regardless of what Plaintiff or the Asatru religion formally professes, there is a connection between the Asatru religion, as it has been used and practiced *in the prison context*, and white supremacy and the risk of violence or racial conflict. Dr. Etter's report alone demonstrates such a connection, and the other sources cited by the Magistrate Judge confirm this conclusion. Plaintiff asserts that his own experts dispute Dr. Etter's report, but these experts do not dispute the findings of Dr. Etter regarding the association between white supremacy, violence and the Asatru faith in the prison context.

For the foregoing reasons, Plaintiff's objections are without merit. Accordingly, the Court will grant Defendants' motion for summary judgment as to Plaintiff's equal protection claim for the reasons stated herein and in the R&R. (*See* Dkt. No. 124, R&R 13-14.)

## V. Conclusion

In sum, Defendants have not shown that a grant of summary judgment in their favor is warranted as to Plaintiff's First Amendment and RLUIPA claims. Defendants have not addressed any alternatives identified by Plaintiff for purposes of weighing the *Turner* factors with respect to Plaintiff's First Amendment claim or for determining whether Defendants' regulation is the least restrictive means of furthering their asserted interest in maintaining prison security with respect to Plaintiff's RLUIPA claim. However, the Court concludes that summary judgment is warranted as to Plaintiff's equal protection claim. Defendants have provided undisputed evidence to show that there is a rational basis for imposing restrictions on Asatru group worship, and Plaintiff failed to offer evidence sufficient to create an issue of fact as to whether other groups that are allowed to engage in group activity present similar security concerns.

An order will be entered that is consistent with this opinion.


Dated: <u>May 19, 2010</u>         <u>/s/ Robert Holmes Bell        </u>
                                    ROBERT HOLMES BELL
                                    UNITED STATES DISTRICT JUDGE